APPELLATE DIVISION

JUAN B. BLANCO, et al.,                    )          DCA NO. 83-9002
                                           )
        Plaintiffs-Appellees,             )
                                           )
                vs.                        )          OPINION
                                           )          Clerk
NAURU LOCAL GOVERNMENT                     )          District Court
COUNCIL,                                   )
                                           )          NOV 1 9 1985
        Defendant-Appellant.               )
                                           )          For The Northern Mariana Islands
                                           )          By _____
                                                         (Deputy Clerk)

BEFORE: DUENAS, LAURETA and WEIGEL*, District Judges

DUENAS, District Judge:

                    STATEMENT OF THE CASE

        Plaintiffs Juan B. Blanco, Josephine B. Akiyama, Juana
B. Borja and Maria Kamiyama filed a complaint against Nauru Local
Government Council on September 29, 1982, alleging breach of a
lease agreement entered into by the parties for land on which the
Nauru building in Saipan is situated.  Plaintiffs requested that
said lease agreement be terminated, and that they be entitled to
recovery   of   the   leased   property   in   question,   reasonable
attorney's fees, costs of suit and a jury trial.

_____

*Hon. Stanley A. Weigel, United States District Judge, Northern
 District of California, sitting by designation.

393

Defendants, represented by Attorney George Allen, filed a motion for a preliminary injunction to enjoin Plaintiffs from any interference in the operation of the Nauru Building pending this litigation. The court heard and denied said motion on October 14, 1982, stating that Defendant had not shown irreparable injury.

In the beginning of the hearing on October 14, 1982, Defendant's counsel represented that a motion to compel arbitration or in the alternative, for the court to appoint an appraiser, would be brought at a later date. Later in this hearing, Defendant's counsel stated:

"I would suggest, I don't think it matters greatly whether the mechanism for resolution of this value question is appraisal, is arbitration, or is determination by citizens of the Northern Mariana Islands as represented by a jury. My client is perfectly happy to take its chances with a jury of people of this community . . ." (Transcript, p.25).

Defendant's counsel, Mr. Allen, then stated toward the end of this hearing that

"[w]e're quite prepared to go bypass appraisal, arbitration, all of that and just go right in and determine with the jury what the value is. . . ." (Transcript, p.31)

Defendant's counsel stated that he would just as soon set a trial date at that time, and the court set the trial for December 13, 1982. (Transcript, p.34).

On October 27, 1982, Defendant filed its answer.

/////

394

On December 9, 1982, Defendant, represented by Attorney Artabane, filed a Motion to Stay Suit and Compel Arbitration pursuant to Article 3 of the lease agreement. A hearing on said motion was held on December 10, 1982, and the court denied Defendant's motion to stay suit and compel arbitration on the following grounds:

    1) that the Federal Arbitration Act (Title 9 U.S.C. § 1 et seq.) does not apply since Article 3 in the lease agreement is clearly an appraisement clause, not an arbitration clause; and there is no evidence in the contract showing that this is a transaction involving commerce;

    2) that over two years has elapsed since the provisions in Article 3 were to be complied with and there is no evidence that either party appointed or relied on an appraiser until a suit was filed; and

    3) that there was a direct waiver of arbitration by Mr. Allen, counsel for Defendant, at the hearing on October 14, 1985, when he stated twice in open court that Defendant was agreeable to submit it to the jury. (Transcript: December 10, 1982, Motion to Compel, pp. 27-34).

A pretrial conference was held on December 10, 1982, and the court determined that it would not submit the issues of breach or material breach of the covenants of the lease agreement to the jury. The court determined as a matter of law that forfeiture of the land would not be granted. The parties stipulated to the following facts:

    1) On March 10, 1981, the parties agreed to increase the monthly rental by $1,000. per month from May 1, 1980, and to effectuate this agreement Defendant paid $11,000. for the 11 months from May 1, 1980 to April 1, 1981, and agreed to pay $3,000. per month from April 1, 1981, until such time as ongoing negotiations between the parties resulted in a permanent rental increase. (Transcript: Dec. 10, 1982, p.52 and 53).

2) That the second term (10 years) of the lease agreement commenced May 1, 1980. (Transcript: December 10, 1982, p.68).

On December 13, 1982, Plaintiffs moved to amend their complaint to set forth the bad faith of Defendant and the court denied the motion.

A jury trial was conducted from December 13-15, 1982. The issues presented to the jury were as follows:

1) The monthly rental value of the property in question;
2) the date the monthly rental rate shall commence; and
3) the date interest, if any, shall accrue on the payments due Plaintiffs.
(Transcript: December 15, 1982, p. 135-143).

The jury rendered the following verdict on December 15, 1982:

Defendant was to begin paying rent as of January 1, 1983, in the amount of $3,902. (No back rent or interest was awarded by the jury.)

On December 22, 1982, a hearing was held for the setting of attorney's fees and costs. The court, in an order dated December 27, 1982, awarded Plaintiffs attorney's fees and costs as the prevailing party in the amount of $8,953.85.

Timely notices of appeal and cross appeal were filed.

STATEMENT OF THE FACTS

This action concerns the ground lease of the land on which the Nauru Building in Saipan is situated. A lease agreement was executed by and between Plaintiffs and Defendant, whereby Plaintiffs leased certain real property on Saipan to

Defendant for a sixty (60) year term. After execution of the lease, Defendant constructed at its own cost the seven-story Nauru Building now situated on the subject leased property.

By the terms of the lease, it was to commence and become effective at midnight on the day it was approved by the High Commissioner of the Trust Territory of the Pacific Islands. The lease was approved by the High Commissioner on December 16, 1975, and this was the commencement date of the first term. The lease provided for rental payments of $2,000. per month for the first five years and for the next 10-year term, i.e. December 17, 1980 to December 16, 1990, the rental was to be "equal to the prevailing rental rates for comparable properties. . . ." The rental value for intervals of ten and five years over the remaining 45-year lease were to be similarly determined.

The parties have been unable to agree upon a permanent rental rate for the 10-year term from December 17, 1980, to December 16, 1990. The parties did, however, enter into an agreement on March 10, 1981, to increase the monthly rental by $1,000. per month from May 1, 1980, and to effectuate this agreement Defendant paid $11,000. for the 11 months from May 1, 1980 to April 1, 1981, and agreed to pay $3,000. per month from April 1, 1981, until such time as ongoing negotiations between the parties resulted in a permanent rental increase.

Plaintiffs then filed suit on September 29, 1982, for termination of the lease agreement and forfeiture.

# I.

The first issue to be addressed by this Court involves Article 3 of the Lease Agreement. Article 3 provides in pertinent part as follows:

"The lease rents for the thirty (30) year renewal period shall be as follows:
a. For the first five (5) years of the renewal term, the monthly rental shall be the same as the last five (5) years of the initial term as stated in (c) above.
b. For the next ten (10) years of the renewal term, the monthly rental shall be equal to the prevailing rental rates for comparable properties; provided, however, that said monthly rental shall not be less than the monthly rental as set forth in the preceding five year renewal term.

Comparable properties shall be defined and determined according to the standards recognized by one of the various professional societies of real estate appraisers; namely, SRA (Senior Realty Appraiser), SREA (Senior Real Estate Analyst), MAI (Member of American Institute of Real Estate Appraisers).
To establish the prevailing rental rates as set forth above, the parties shall meet at least ninety (90) days prior to the end of each of the five (5) or ten (10) year periods to determine the prevailing rental rates. If the parties are unable to agree to the prevailing rental rates at least seventy-five (75) days prior to the end of the applicable period, then the matter shall be submitted to arbitration. The matter shall be arbitrated by three (3) persons. One person shall be appointed by the Lessor and one person appointed by the Lessee, and these two (2) persons appointed by the Lessor and the Lessee shall then appoint a third person to complete the necessary board. The arbitrators shall be instructed to determine the prevailing rental rates for comparable lots according to the standards as set forth above. A majority ruling of the arbitrators, as to the prevailing rental rates, shall then establish the rent for the following term. In the event the

arbitrators are unable to agree as to the prevailing rental rates at least forty-five (45) days prior to the end of the applicable term, then the prevailing rental rates shall be determined by a qualified real estate appraiser who is a member of one of the various professional societies for real estate such as SRA, SREA and MAI; or by a qualified real estate appraiser whose opinions and appraisal reports are acceptable to at least three (3) financial institutions on Saipan, Mariana Islands. The appraiser shall be instructed to determine the prevailing rental rates by the end of the applicable term of the lease. In the event the appraiser is unable to complete the report within the time frame then the lease rents for the previous period shall continue, subject to completion of the appraiser's report. Any underpayment, if any, shall be paid immediately by Lessee. All costs and expenses relating to the arbitrators and the appraisers shall be shared equally between the parties.

Defendant-Appellant argues that the trial court should have stayed proceedings and compelled arbitration pursuant to Article 3 of the Lease Agreement to determine the appropriate rental value for the 10-year term commencing May 1, 1980, and ending May 1, 1990. We disagree.

In addressing this issue, we shall assume, for the purposes of this opinion, that Article 3 of the Lease Agreement contains an arbitration clause.[1]

Defendant-Appellant maintains that the trial court erred in not compelling arbitration under the common law and/or pursuant to the provisions of the Federal Arbitration Act, Title 9 U.S.C., Section 1, et seq. We again disagree. Upon careful review of the record in this case, we determine that not only is Defendant-Appellant in default in not complying with the Article

3 provisions of arbitration but that counsel for Defendant-Appellant twice made a direct waiver of arbitration in open court at the October 14, 1982 hearing before the trial court.

As the Court in C.P. Robinson Construction Co., et al. v. National Corporation for Housing Partnerships, 375 F. Supp. 446, 450 (M.D. N.C., 1974), stated:

> "9 U.S.C. §§ 2 and 3 provide for a stay of judicial proceedings when four conditions are met. First, there is a written provision for arbitration in the contract. Second, the contract evidences a transaction involving commerce. Third, the Court is satisfied that the issue involved in suit is referrible (sic) to arbitration under the written agreement. Fourth, the applicant for the stay is not in default in proceeding with such arbitration."

Without addressing any other conditions, it is clear that condition number four has not been met. Pursuant to the arbitration clause the parties to the lease agreement and to this lawsuit were to meet 90 days prior to the end of the first five-year term, that is, 90 days prior to December 15, 1980, to determine the prevailing rental rates for the next 10 year term. Then, if the parties were unable to reach an agreement as to the prevailing rates at least 75 days prior to December 15, 1980, the matter was to be submitted for arbitration to three arbitrators, one appointed by lessor, one appointed by lessee and the third appointed by the first two arbitrators. If the three arbitrators were unable to agree as to the prevailing rental rates at least 45 days prior to December 15, 1980, then the prevailing rental rates were to be determined by a qualified real estate appraiser.

400

The parties to this action certainly did not comply with this provision; they neither appointed an arbitrator nor relied on the arbitration clause until after this suit was filed on September 29, 1982.

We, therefore, determine that the trial court did not err in denying Defendant-Appellant's motion to stay proceedings and compel arbitration.

## II.

The second issue raised by Defendant-Appellant is that the trial court improperly rewrote the parties' lease agreement by changing the commencement date for valuation purposes from December 16, 1980, to May 1, 1980.

This issue can be easily disposed of since the parties stipulated that the commencement date for the second term would be May 1, 1980, and also stipulated to having the jury determine the valuation issue as of that date. (Transcript, December 10, 1982, p.68).

## III.

Defendant-Appellant's last issue deals with attorney's fees and costs. Defendant-Appellant argues that Plaintiffs are not the prevailing party and are not entitled to attorney's fees in the amount of $6,500. and costs in the total amount of $2,453.85.

/////

In order to reverse the trial court's award of attorney's fees and costs, this court must find an abuse of discretion. However, no such abuse is present in this case.

Plaintiffs prevailed on two issues. The first involved the lessee's compliance with Article 9 of the lease agreement. Article 9 requires the lessee to procure and deliver to the lessor a liability insurance policy for the leased premises. The court below correctly determined that compliance with the provisions of Article 9 was solely due to Plaintiffs' commencement of this action. The second issue involved the rental value for the second term of the lease which the jury determined would be increased by $902, effective January 1, 1983.

The trial court took all matters into consideration and awarded attorney's fees to only one of the three attorneys representing Plaintiffs, and only for the work counsel performed on the above two issues. There was clearly no abuse of discretion by the trial court.

IV.

On cross-appeal, Plaintiffs argue that the trial court erred in not permitting the jury to determine the issues of whether Defendant Nauru allegedly breached the lease agreement by failing to provide Plaintiffs with a copy of the liability insurance policy of the premises, in accordance with Article 9 of the lease agreement, and whether such breach amounted to a forfeiture of the leased premises pursuant to Article $13^2$ of the

lease agreement. Article 9 of the lease agreement states as follows:

> Lessee covenants and agrees to save and keep harmless the Lessor against all liabilities, damages and claims to persons or property; and in connection therewith, Lessee agrees to procure and maintain in force during the term of this lease, and any extension thereof, at its expense, public liability insurance in companies and through brokers authorized to do business on Saipan in a minimum amount of one hundred thousand dollars ($100,000) for each person injured, three hundred thousand dollars ($300,000) for any one accident, and fifty thousand dollars ($50,000) for property damage. Copies of such policies shall be delivered to Lessor and shall contain a clause stating that at least thirty (30) days notice shall be given to Lessor prior to cancellation or refusal to renew any such policies. Lessee agrees that, if such insurance policies are not kept in force during the entire term of this lease, Lessor may procure the necessary insurance, pay the premium therefor, and said premium shall be repaid by Lessee to Lessor immediately upon Lessor's demand.

Plaintiffs maintain that they are entitled to a jury trial on the forfeiture issue and rely on the U.S. Supreme Court case <u>Pernell v. Southall Realty</u>, 416 U.S. 363, 94 S.Ct. 1723, 40 L.Ed. 2d 198 (1974). In <u>Pernell</u>, <u>Id.</u>, a landlord brought an action against its tenant seeking to evict him from the premises for alleged nonpayment of rent and the tenant Pernell demanded a jury trial in his answer. The trial judge struck the jury demand, tried the case himself, and entered judgment for Plaintiff landlord Southall. The U.S. Supreme Court held that the right to recover possession of real property was a right ascertained and protected at common law and hence, is entitled to a trial by jury under the Seventh Amendment to the U.S.

Constitution. In the case at bar, however, the trial court ruled prior to trial that as a matter of law under the facts and circumstances of this case, forfeiture was not the appropriate remedy. The U.S. Supreme Court even stated in Pernell, Id. at p.384, that:

> "And, of course, the trial court's power to grant summary judgment where no genuine issues of material fact are in dispute provides a substantial bulwark against any possibility that a Defendant will demand a jury trial simply as a means of delaying an eviction."

It is clear that the issue of forfeiture should not have gone to the jury. This Court determines as a matter of law that the asserted violation of Article 9 does not constitute a default under Article $12^3$ of the lease agreement since Article 9 contains its own remedy, that is, in the event Defendants fail to procure and deliver the required liability insurance policy, Plaintiffs can purchase their own and obtain reimbursement for the cost from Defendant Nauru.

Additionally, Plaintiffs have effectively waived this breach and forfeiture issue by accepting rental payments and continuing with the terms and conditions of the lease. Highland Plastics, Inc. v. Enders, 167 Cal. Rptr. 353, 359, 109 Cal. App. 3d Supp. 1 (1980).

/////
/////
/////
/////

404

The trial court was correct in disposing of the forfeiture issue as a matter of law.

On the basis of the foregoing, the judgment of the Commonwealth Trial Court is affirmed.

_____
CRISTOBAL C. DUENAS, District Judge

_____
ALFRED LAURETA, District Judge

_____
STANLEY A. WEIGEL, District Judge

[1] The issue of whether Article 3 of the Lease Agreement contains an appraisement clause or an arbitration clause was never raised nor addressed by either party before this court. We therefore will assume for the purposes of this opinion that Article 3 contains an arbitration clause.

[2] Article 13 of the lease agreement states as follows:

"Upon the concurrence of any event of default specified in Article 12, Lessor may terminate this lease and may, upon fourteen (14) days written notice, enter in, into and upon leased property and take possession of all buildings, fixtures, and improvements and evict Lessee without liability of trespass. The remedies herein shall not prejudice Lessor's other rights and remedies at law or equity.

[3] Article 12 of the lease agreement states in pertinent part as follows:

"Time is of the essence and Lessee shall automatically be in default of this lease if: ...B. Lessee shall breach any term, provision or covenant of this lease, other than the payment of rent, taxes or other charges, and fails to commence the removal or curing of such breach within thirty (30) days from and after written notice from Lessor..."